THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM TOOHEY, Plaintiff in Error.

*Opinion filed December 16, 1925.*

1. CRIMINAL LAW—*when criminal negligence of driver of automobile is question for the jury.* Where the weight of the evidence shows that in one of the principal built-up business districts of a city the defendant drove an automobile at a rate of speed which the statute provides shall be *prima facie* unreasonable and dangerous, the question whether the defendant was guilty of criminal negligence is a question of fact for the jury, under proper instructions.

2. SAME—*what instructions as to credibility of witnesses are erroneous.* It is error to instruct the jury that in determining the credibility of the defendant as a witness they may consider his demeanor and conduct on the witness stand "and during the trial," and an instruction as to the credibility of other witnesses that the jury may consider "all other surrounding circumstances appearing on the trial" is erroneous.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. ARTHUR W. DESELM, Judge, presiding.

JOHN A. MAYHEW, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ANKER C. JENSEN, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

319—8

Mr. JUSTICE FARMER delivered the opinion of the court:

William Toohey was convicted and sentenced by the circuit court of Kankakee county to imprisonment in the penitentiary for the crime of manslaughter.

On December 10, 1924, Albert W. Cyrier, while crossing Court street, in the city of Kankakee, near its intersection with Indiana avenue, was struck by an automobile and so injured that he died shortly thereafter. Court street at the place of the accident is sixty-eight feet wide and in one of the principal business districts of the city of Kankakee. It runs east and west and is crossed at right angles by Indiana avenue, running north and south. About 5:15 o'clock in the evening of December 10, 1924, deceased, in company with George Lezotte, Russell Lezotte and Leon Brosseau, came from the Armory building, located on the east side of Indiana avenue, about half a block north of Court street. When they reached the corner of Court street and Indiana avenue three of the young men stopped while one was lighting a cigarette, but Cyrier walked on west across Indiana avenue and then turned south to cross Court street. While he was crossing the street an automobile which came from the east struck him, threw him ten or fifteen feet in the air and about as many feet toward the west. He was injured so badly that he died two days later. The car was an Essex coach and was being driven by defendant. Clarence Olsen was the owner of the car and was riding with defendant. The proof for the People shows that at the time the car struck deceased it checked its speed and then drove on west. Darwin Durham was half a block or such a matter west of where the accident occurred, saw the body fly into the air, and when the car came on past him he started after it to try to get the number. The car proceeded on to the second north and south street west of Indiana avenue, where it was stopped by a signal light in the street, and Durham came up to it before it started again. He told the parties in the

car they had hit someone, but they said they had not. Durham then noticed a cap between the fender and radiator, picked it up and showed it to the persons in the car as the cap of someone they had hit, but when the signal lights gave the right of way the car drove on. Durham took its number. The matter was reported to the police and Olsen was arrested that night. Defendant was an employee of the New York Central Railroad Company and worked from midnight until eight o'clock. The next night he was arrested while in bed at his home. Defendant and Olsen were indicted for manslaughter, and the court granted a motion for a separate trial for them. Defendant was first put on trial, and the jury disagreed. The case was dismissed as to Olsen. Defendant was again tried at the May term, 1925, and convicted of manslaughter. He has sued out this writ of error to review the judgment and conviction.

The errors assigned and argued are, that the evidence was not sufficient to warrant a conviction; that defendant was prejudiced by errors of the court in the admission and exclusion of evidence; that the court erred in giving and refusing instructions; and that the defendant did not have a fair and impartial trial.

Most of defendant's original brief of sixty pages and his reply brief of thirty-five pages is devoted to a discussion of the sufficiency of the evidence to warrant a conviction. It is his contention that the evidence failed to prove, beyond a reasonable doubt, defendant was driving the car at a high and reckless rate of speed through one of the principal business streets of the city of Kankakee. Two witnesses for the People who saw the car before it hit deceased testified it was going twenty-five or thirty miles an hour. Three other witnesses whose attention was attracted by the collision with deceased testified the car's speed was from twenty-five to thirty miles an hour. Durham, the witness who was a half block west of the junction of Indiana avenue and Court street when the accident occurred, testi-

fied when the car passed him it was going at a speed of fifteen or twenty miles an hour; and a witness who was driving east on the south side of Court street and was west of Indiana avenue, said the car was going past him at a speed of from twenty to twenty-five miles an hour. A woman who saw the car said it was going fast, but said she could not estimate how fast. Defendant testified he was driving, as he crossed the Indiana avenue intersection, about twelve or fifteen miles per hour. He testified he did not see the deceased and did not hit him.

Counsel for defendant tediously and at great length argues in his briefs that the witnesses who testified for the People as to the speed of the car were unreliable, and that their own testimony is inconsistent with itself and is contradicted by Durham and the witness who was driving east on the south side of Court street, both of whom testified for the People. One or more of the People's witnesses testified the speed of the car was slackened when it hit deceased and then went on. The evidence on behalf of the People showed the car was going at a rate of speed in excess of fifteen miles an hour. The weight of the proof shows it was going from twenty-five to thirty miles an hour. It was moving on one of the principal built-up business districts of the city at a rate of speed which the statute provides shall be *prima facie* evidence that it is greater than is reasonable and endangers other persons. In *People* v. *Falkovitch*, 280 Ill. 321, it was held the driver of an automobile is guilty of criminal negligence where he drives more than fifteen miles an hour on a boulevard in front of a public school with knowledge of the circumstances and the fact that children are crossing on their way to school. In *People* v. *Schwartz*, 298 Ill. 218, it was said driving an automobile at a rate of speed declared by the statute negligence makes it a question for the jury to determine whether such wanton and willful disregard of the public amounts to criminal negligence. The *Falkovitch case* was approved and

quoted from in *People* v. *Camberis,* 297 Ill. 455. In *People* v. *Adams,* 289 Ill. 339, the court said criminal negligence is not every act carelessly performed which may cause the death of someone, but to become criminal negligence it must be willful and wanton, or of such a character as to show an utter disregard for the safety of others; that whether the driver of an automobile is guilty of criminal negligence is a question of fact for the jury, under proper instructions.

A reviewing court would not be warranted in holding the verdict was not authorized by the evidence.

Complaint is made of several instructions given on behalf of the People and of one refused on behalf of defendant. Instruction No. 5 for the People is on the subject of the credibility of defendant as a witness, and after telling the jury a number of things they had a right to consider in determining that question, told the jury they might consider his demeanor and conduct on the witness stand "and during the trial." This instruction was held reversible error in *Purdy* v. *People,* 140 Ill. 46, and *Vale* v. *People,* 161 id. 309. In *People* v. *McGinnis,* 234 Ill. 68, it was condemned, but the court said where there is little, if any, conflict in the evidence and the testimony of the defendant is not vital to his defense and the proof of guilt is clear, giving the instruction would not necessarily require a reversal of the judgment. In those cases the reasons why the instruction should not be given were discussed, and we think it was reversible error to give the instruction in this case.

The seventh instruction given for the People told the jury, in determining the weight to be given the testimony of the witnesses they might consider a number of things mentioned, "and from all other surrounding circumstances appearing on the trial" determine which witnesses were most worthy of credit. This instruction was held to be erroneous in *People* v. *Terrell,* 262 Ill. 138, and *People* v. *Fox,* 269 id. 300.

It cannot be said in this case that the instructions were not prejudicial. Defendant testified in his own behalf, and his testimony was vital, if true, to his defense, and whether, if proper instructions had been given, the evidence was sufficient to warrant an affirmance, the errors in the instructions referred to are of a character which we cannot say had no prejudicial effect, and must therefore hold they were reversible error.

Some complaint is made of other instructions, but we find no prejudicial error in giving or refusing them.

Other errors assigned are not of a character to require discussion.

The judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*